UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/16

------------------------------------------------------- X

BELGICA GARCIA,

        Plaintiff,

    - against -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

------------------------------------------------------- X

## OPINION AND ORDER

15-cv-5516 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Belgica Garcia seeks judicial review of the decision by the Commissioner of the Social Security Administration ("Commissioner") finding her ineligible for Supplemental Security Income ("SSI") under section 1614(a)(3)(4) of the Social Security Act ("SSA"). Both parties move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the decision of the Commissioner is REVERSED and the case is REMANDED for the calculation of benefits.

## II.    BACKGROUND

### A.    Procedural History

On August 8, 2012, Garcia applied for SSI alleging disability since January 12, 2010, based on a permanent hand injury, high blood pressure, diabetes, and cardiovascular problems and later alleged mental disabilities as well.[1]  When the application was denied, Garcia requested a hearing to appeal this determination.[2]  A hearing was held on April 24, 2014, before Administrative Law Judge ("ALJ") Michael Friedman.[3]  ALJ Friedman – addressing claims for both physical and mental disability – found Garcia "not disabled under section 1614(a)(3)(A) of the Social Security Act."[4]  On May 15, 2015, the decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Garcia's request for review.[5]

Garcia does not contest ALJ Friedman's determination that she does not have a physical disability, but contends that he erred by finding her not mentally disabled.  Garcia argues that ALJ Friedman failed to properly (1) weigh

---

[1]    *See* Transcript of the Administrative Record ("Tr.") at 132-141, 155.

[2]    *See id.* at 66-78.

[3]    *See id.* 41-65.

[4]    *Id.* at 24.

[5]    *See id.* at 1-5.

the medical evidence and (2) evaluate her credibility at the hearing.  The

Commissioner contends that ALJ Friedman's decision should be upheld because it

is supported by substantial evidence.

**B.    Testimonial Evidence**

At the time Garcia applied for SSI in 2012, she was fifty-years-old

and had not worked since 2010.[6]  She has graduated from high school and

completed two years of college in the Dominican Republic.[7]  Garcia attributed her

initial physical disability to a fall she suffered which she alleges caused permanent

injuries.[8]  Prior to suffering these injuries, Garcia reported that she worked as a

waitress and factory worker from 1984 to 1990 and as a babysitter from 1990 to

2010.[9]

At the hearing, Garcia testified with the aid of a Spanish interpreter.[10]

Although she indicated that she could speak and understand some English, she

---

[6]     *See id.* at 132.

[7]     *See id.* at 156.

[8]     *See id.* at 460.

[9]     *See id.* at 156, 180, 211.  Different documents in the record show conflicting dates for when Garcia actually performed these jobs, but the discrepancies are immaterial for purposes of this opinion.

[10]    *See id.* at 44.

3

testified that she could not read or write in English.[11]  Garcia testified that she lived

in an apartment with her two daughters and her two-year-old granddaughter.[12]

Physically, she testified that she was only able to stand for about thirty

minutes, walk for only two blocks, sit for twenty minutes, and could only

momentarily lift a "one or two pound bag of sugar."[13]  She described pain in her

leg, hip, shoulder, and wrist.[14]  As a result, she testified that she can do little

housework although she can go grocery shopping and cook simple meals.[15]  She

can dress herself in plain clothing but struggles with buttons or zippers.[16]

Mentally, she reported a "poor" mood and that she did not care for her

appearance or comb her hair, but others would do so for her.[17]  She sees a

psychiatrist once a month and a therapist twice a month.[18]  She mentioned

problems with concentration because "all day [problems are] going through my

---

[11]    See id. at 54, 154.

[12]    See id. at 44.

[13]    Id. at 47.

[14]    See id. at 45, 50.

[15]    See id. at 48.

[16]    See id. at 49.

[17]    Id. at 51.

[18]    See id. at 46.

head."[19]  Garcia struggles to sleep and takes Ambien but has "no energy in the morning."[20]

A vocational expert ("VE") was called to testify about whether any jobs for someone with certain hypothetical limitations existed in the national economy.  Based on a hypothetical person with Garcia's language skills, "medium physical [residual functional capacity ("RFC")]," use of her right hand limited to "no more than occasional overhead reaching," and the ability to perform "jobs involving simple routine tasks without production quotas and involving only occasional interaction with supervisors, co-workers and the public," the VE concluded that there were at least three jobs in the national economy with 310,000 positions in aggregate:  bagger, hand packer, and cleaner II.[21]

Garcia's attorney then questioned the vocational expert.  He added an additional hypothetical limitation to those already considered – "an inability to maintain a regular schedule defined as requiring three absences per month from the workplace" – and asked whether this hypothetical person could perform any work

---

[19]     *Id*. at 46, 50.

[20]     *Id*. at 50.

[21]     *Id*. at 54-58.

in the national economy.[22]  The VE testified there would be no jobs for such a person.[23]

## C.    Medical Records

The record contains treatment notes spanning January 2012 to January 2014 from the Emma L. Bowen Community Service Center ("Bowen"), also known as the Upper Manhattan Mental Health Center, although the record indicates she received treatment there since 1998.[24]  At Bowen, Garcia primarily saw social worker ("SW") Milagros Nunez for therapy and psychiatrist Dr. Yvonne Kury, M.D. for medication management.

### 1.    SW Milagros Nunez

The record contains Progress Notes from several dozen sessions with SW Nunez.  SW Nunez's notes show that Garcia frequently complained of depression and anxiety, with the therapy sessions focused primarily on issues with her family – in particular she described concerns about domestic violence and substance abuse – and problems with her health.[25]  At times, she mentioned

---

[22]    *Id*. at 62.

[23]    *See id.*

[24]    *See id.* at 481-548, 550-575, 577-597.

[25]    *See id.* at 515-518, 521, 523, 525, 528, 532, 536, 539, 543-544, 546-547, 552, 554, 558-559, 562, 566, 568, 570, 573, 578, 582, 585, 587, 590, 594.

financial issues and fear of eviction as stressors.[26]  Garcia also recounted instances of childhood trauma and continued conflict with her mother.[27]  Garcia never reported any suicidal ideation and reported compliance with her medications except when she ran out.[28]

### 2.    Dr. Yvonne Kury

The record contains three main types of medical records from Dr. Kury: (a) Progress Notes documenting office visits, (b) Treatment Plan Reviews conducted every few months, and (c) Impairment Questionnaires summarizing Dr. Kury's findings.  The Progress Notes in the record, consistent with SW Nunez's notes, describe complaints of depression and anxiety centered on her family issues and physical problems.[29]  Dr. Kury prescribed Wellbutrin (an antidepressant) and Ambien (a sleep aid) through August 2013, and then switched Garcia to Citalopram (an antidepressant) but continued Ambien.[30]  The notes on Garcia's

---

[26]    *See id.* at 578, 585, 587, 590, 594.

[27]    *See id.* at 558-559, 568.

[28]    *See id.* at 515-518, 521, 523, 525, 528, 532, 536, 539, 543-544, 546-547, 552, 554, 558-559, 562, 566, 568, 570, 573, 575, 578, 582, 587, 590, 594.

[29]    *See id.* at 520, 537, 542, 545, 555-556, 564-565, 571-572, 580-581, 588-589, 591-592, 595-596.

[30]    *See id.* at 597.

mental status indicate that she was well groomed,[31] well oriented,[32] with neat appearance,[33] cognition in normal limits,[34] and no suicidal ideation.[35]  However, Dr. Kury's treatment notes indicate she most frequently assessed Garcia as depressed[36] although on a couple of occasions assessed her as stable.[37]

The five "Treatment Plan Reviews" span January 19, 2012 to December 12, 2012.[38]  Of these reviews, four out of five indicate "severe" impairment in the functional categories of "Health," "Social/Interpersonal," and "Leisure."[39]  Three out of five indicate "severe" impairment in

---

[31]    *See id.* at 537.

[32]    *See id.* at 520, 537, 542, 545.

[33]    *See id.* at 537, 555, 564, 571, 580, 588, 591, 595.

[34]    *See id.* at 564, 571, 580, 588, 591, 595.

[35]    *See id.* at 520, 537, 542, 545, 555, 564, 571, 580, 588, 591, 595.

[36]    *See id.* at 520, 542, 545, 555, 564, 571, 588, 595.

[37]    *See id.* at 537, 591.

[38]    Note that all of these reviews were signed by Dr. Kury with the exception of the January 19, 2012 review which was completed by Dr. Orozco. *See id.* at 510.

[39]    *Id.* at 481, 493, 499, 505.  The reviews allow a doctor to rank impairment (in order from most to least impaired): none, mild, moderate, severe, and extreme.

"Educational/Vocational" functioning.[40]  Notably, the only review which found across the board "moderate" impairment was conducted September 27, 2012 – two days after Garcia was examined by a consulting psychiatrist.[41]  All of the reviews diagnosed Garcia with "Major Depressive Disorder, Recurrent, Moderate" and assigned her a Global Assessment of Functioning ("GAF") score of 65.[42]

Dr. Kury completed two Impairment Questionnaires.  In the first, completed January 10, 2013, Dr. Kury diagnosed Garcia with "Major Depressive Disorder, Recurrent, Moderate" and assigned Garcia a decreased GAF score of 55.[43]  In her specific findings, Dr. Kury noted Garcia was "markedly limited" – meaning the individual is "effectively preclude[d] . . . from performing the activity" – in her ability to "maintain attention and concentration for extended periods of time," "perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance," "to sustain ordinary routine without supervision," and "to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without

---

[40]    *Id.* at 493, 499, 505.

[41]    *Id*. at 487.

[42]    *Id*. at 481, 487, 493, 499, 505.

[43]    *Id*. at 473.

an unreasonable number and length of rest periods."[44]  From this Dr. Kury

concluded that Garcia could tolerate "low [work] stress," but that she would miss

work as a result of her "impairments or treatment" "more than three times a

month."[45]

       In the final Impairment Questionnaire before the ALJ hearing,

completed February 21, 2014, Dr. Kury again diagnosed Garcia with "Major

Depressive Disorder, Recurrent, Mod[erate]."[46]  In her specific findings, she again

found marked limitation in the aforementioned areas related to "Sustained

Concentration and Persistence."[47]  Once more Dr. Kury concluded that Garcia

would likely need to miss work as a result of her "impairments or treatment" "more

than three times a month."[48]  However, Dr. Kury found decreased ability to deal

with stress and concluded that Garcia could not tolerate "even 'low stress'" work.[49]

### 3.    Dr. Haruyo Fujiwaki

---

[44]    *Id*. at 475-478.

[45]    *Id*. at 479-480.

[46]    *Id*. at 608.  Dr. Kury did not include a GAF score in this questionnaire.

[47]    *Id*. at 611-612.

[48]    *Id*. at 614-615.

[49]    *Id*. at 614.

On September 25, 2012, prior to both of the Impairment Questionnaires, Dr. Fujiwaki performed a consultative psychiatric evaluation.[50]  He observed that Garcia was "dressed casually and adequately groomed."[51]  Dr. Fujiwaki noted that "[s]he was able to count and do simple calculations" and able to "perform serial 3s."[52]  He found her to have dysphoric affect and dysthymic mood.[53]

In his "Medical Source Statement," Dr. Fujiwaki concluded that "[s]he can maintain attention and concentration to a certain extent" and "perform certain complex tasks independently."[54]  Importantly, he concluded that Garcia could "maintain a regular schedule with some difficulty due to depressed mood" but that "[s]he may have some difficulty . . . dealing with stress appropriately.[55]  He diagnosed her with "[d]epressive disorder, NOS."[56]

---

[50]    *See id.* at 460-463.

[51]    *Id.* at 461.

[52]    *Id.* at 462.

[53]    *See id.* at 461.

[54]    *Id.* at 462.

[55]    *Id.*

[56]    *Id.* at 463.

11

**D.      Decision of the ALJ**[57]

Relevant here, ALJ Friedman found both that Garcia was not mentally

disabled and that she could perform work in the national economy.  The ALJ did

not assign controlling weight to the opinion of Dr. Kury as set forth in the

Impairment Questionnaires because Dr. Kury's opinion is not "supported by

clinical findings . . . and is contradicted by . . . other substantial evidence."[58]

In particular, the ALJ found that "treatment records . . . contradict Dr.

Kury's assessment of disability."[59]  While the treatment notes found "some degree

of depressed and anxious mood," Garcia was found to be within normal limits on

certain areas of her mental status exams, and there were no findings of "significant

cognitive difficulties, suicidal/homicidal ideation, impaired thought processes, and

hallucinations or delusions."[60]  Finally, the ALJ recognized that the Treatment Plan

Reviews regularly found "severe" levels of impairment across the functional

spectrum, but Garcia was still assigned a GAF score of 65 which represents "mild

---

[57]      Although the ALJ's decision addressed both Garcia's claimed mental and physical disabilities, I summarize the decision only as it relates to her mental disabilities as challenged here.

[58]      *Id*. at 21-22.

[59]      *Id*. at 22.

[60]      *Id*.

overall impairment."[61]

ALJ Friedman accorded "significant weight" to the findings of Dr. Fujiwaki, yet he did not specify the reason for according Dr. Fujiwaki's opinion such weight.[62]  The ALJ summarized Dr. Fujiwaki's findings as indicating that Garcia had "partial limitations only as to her ability to maintain attention and concentration, maintain a regular schedule, relate with others, and deal with stress, as a result of depression and anxiety."[63]

Based on Garcia's RFC and the testimony of the VE, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."[64]

## III.  APPLICABLE LAW

### A.    Standard of Review

In reviewing an ALJ's decision, a district court does not conduct a de novo review of the ALJ's decision.[65]  The ALJ must set forth the crucial factors

---

[61]     *Id*.

[62]     *Id*.

[63]     *Id*.

[64]     *Id*. at 23.

[65]     *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

supporting her decision with sufficient specificity,[66] but a district court must not disturb the ALJ's decision if "correct legal standards were applied" and "substantial evidence supports the decision."[67]  "Substantial evidence is 'more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[68]

"'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"[69]  Even if there is substantial evidence for the claimant's position, the Commissioner's decision must be affirmed when substantial evidence exists to support it.[70]  Moreover, the Commissioner's findings of fact, as well as the

---

[66]     *See Moss v. Colvin*, No. 13 Civ. 731, 2014 WL 4631884, at *26 (S.D.N.Y. Sept. 16, 2014) (citing *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir. 1984)).

[67]     *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  *See also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

[68]     *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[69]     *Tarsia v. Astrue*, 418 Fed. App'x 16, 17 (2d Cir. 2011) (quoting *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999)).

[70]     *See Davila-Marrero v. Apfel*, 4 Fed. App'x 45, 46 (2d Cir. 2001) ("'Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.'") (quoting *Alston v. Sullivan*, 904 F.2d 122,

14

inferences and conclusions drawn from those findings, are conclusive even in cases where a reviewing court's independent analysis of the evidence might differ from the Commissioner's analysis.[71]

> **B.      Five-Step Process**

Pursuant to the Act, the SSA has established a five-step sequential process to determine whether a claimant is disabled.[72]  At step one, the ALJ must decide whether the claimant is engaging in substantial gainful activity ("SGA").[73]  Generally, if the claimant has earnings from employment above a certain level, she is presumed to be able to engage in SGA and is deemed not disabled.[74]  If the claimant is not engaging in SGA, the analysis continues.

At step two, the ALJ must determine whether the claimant has a "severe" medically determinable impairment or combination of impairments.[75]  An impairment or combination of impairments is severe if it significantly limits the

---

126 (2d Cir. 1990)).

[71]      *See Hartwell v. Barnhart*, 153 Fed. App'x 42, 43 (2d Cir. 2005).

[72]      *See* 20 C.F.R. § 404.1520(a)(4).

[73]      *See id.* § 404.1520(a)(4)(i).

[74]      *See id.* § 404.1520(b).

[75]      *Id.* § 404.1520(a)(4)(ii).  *See also id.* § 404.1520(c).

claimant's ability to perform basic work-related activities.[76]  An impairment is not severe when the evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work.[77]

At step three, the ALJ determines whether the claimant's impairment meets or medically equals the criteria of a listed impairment.[78]  If the impairment is contained in the Listings, the claimant is considered disabled and the ALJ does not reach steps four or five.[79]  If the impairment does not meet the Listings, the analysis continues.

At step four, the ALJ determines the claimant's RFC,[80] which is "the most [claimant] can still do despite [her] limitations," with respect to past relevant

---

[76]     *See id.* §§ 404.1520(c); 404.1521(b) (defining basic work activities).

[77]     *See id.* § 404.1521(a).

[78]     *See id.* Part 404, subpart P, Appendix 1 (hereinafter the "Listings" or "Listing of Impairments").  The Listings define impairments that would prevent an adult, regardless of her age, education, or work experience, from performing any gainful activity, not just SGA.  *See id.* § 404.1525(a) (stating that the purpose of the Listings is to describe impairments "severe enough to prevent an individual from doing any gainful activity").

[79]     *See id.* § 404.1520(d), (a)(4).

[80]     *See id.* § 404.1520(e), 404.1545.

work.[81]  In making this finding, the ALJ must consider all of the claimant's

impairments, including any "related symptoms, such as pain, [which] may cause

physical and mental limitations that affect what [claimant] can do in a work

setting."[82]  Then, the ALJ must determine whether the claimant has the RFC to

perform any relevant work that the claimant has done in the past.[83]  If the claimant

is unable to do any past relevant work, the analysis proceeds.[84]

At the last step of the evaluation, step five, the ALJ must determine

whether the claimant's RFC, age, education and work experience allow her to

perform any other work in the national economy.[85]  If so, the claimant is not

disabled.  But if she is unable to do other work, the claimant is disabled.

Although the claimant generally continues to have the burden of

proving disability, a limited burden of production shifts to the Commissioner at

step five.  To support a finding that the claimant is not disabled at this step, the

Commissioner must provide evidence demonstrating that other work exists in

significant numbers in the national economy that the claimant can perform, given

---

[81]  *Id*. § 404.1545(a)(1).

[82]  *Id.*

[83]  *See id.* § 404.1520(f).

[84]  *See id*.

[85]  *See id.* § 404.1520(g)(1).

17

her RFC, age, education and work experience.[86]

### C.   Medical Sources and the "Treating Physician" Rule

"The term 'medical sources' refers to both 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources.'"[87] Medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.[88] Medical sources who are *not* acceptable medical sources include nurse practitioners, physician assistants, and certain other sources.[89]

Only acceptable medical sources can be relied on to establish the existence of a medically determinable impairment or be considered treating sources whose opinions are entitled to controlling weight under the "treating physician" rule.[90] Under the "treating physician" rule, "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical

---

[86]   *See id.* §§ 404.1520(g), 404.1560(c).

[87]   SSR 06-03p, 2006 WL 2329939, at *1 (S.S.A. Aug. 9, 2006) ("SSR Medical Sources") (citing 20 C.F.R. §§ 404, 1512, 416.912).

[88]   *See id.*

[89]   *See id.* at *2.

[90]   *See id.* at *2-3.

findings and not inconsistent with other substantial record evidence."[91]  When a treating physician's opinion is not given controlling weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive.  These factors include: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist.[92]  After considering the above factors, the ALJ must "'comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion.'"[93]

## IV.   DISCUSSION

The ALJ erred at step five of the disability analysis by finding that

---

[91]     *Shaw v. Carter*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. § 416.927(d)(2)).  *See also* 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

[92]     *See* 20 C.F.R. § 404.1527(d)(2).

[93]     *Newbury v. Astrue*, 321 Fed. App'x 16, 17 (2d Cir. 2009) (quoting *Halloran*, 362 F.3d at 33).  *See also* 20 C.F.R. § 404.1527(d)(2) (stating that the agency "will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion").

Garcia could perform jobs in the national economy.[94]  Specifically, the ALJ erred by failing to accord proper weight to the opinion of the treating psychiatrist Dr. Kury.  Failure to properly apply the treating physician rule means the Commissioner's decision is not based on substantial evidence.[95]

The crucial piece of Dr. Kury's opinion that the ALJ disregarded was the conclusion that Garcia would miss work more than three times a month because of her mental condition.  The VE testified that, assuming Garcia maintained the RFC to perform medium work, there would be no jobs in the national economy if she could not "maintain a regular schedule defined as three absences per month."[96]

Dr. Kury's opinion should have been given controlling weight.  Dr. Kury, as a psychiatrist, specializes in mental health.  Garcia was treated at Bowen

---

[94]     Because proper application of the treating physician rule at step five is sufficient to find Garcia disabled, I decline to address whether the ALJ committed error at the remaining steps of the analysis.

[95]     *See Golden v. Secretary of Health & Human Servs.*, 740 F. Supp. 955, 960 (W.D.N.Y. 1990) ("Where the treating physician rule has been applied incorrectly, a decision by the Secretary denying benefits cannot be upheld on the grounds that the denial is supported by substantial evidence." (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

[96]     Tr. at 62.

since 1998 and by Dr. Kury for at least two years.[97]  During those two years, Dr.

Kury consistently found severe functional limitations and even documented a

decline in GAF score – a metric that the ALJ afforded significant weight.  These

factors, while mentioned by the ALJ, were given no weight.  ALJ Friedman found

the opinion of Dr. Kury "not at all convincing" based on the remaining two factors,

that the opinion was not supported by evidence in the record and was not

consistent with the record as a whole.[98]  This conclusion is not supported by

substantial evidence.

The ALJ noted that the source of her depression and anxiety were

"family issues . . . as well as other domestic issues . . . [and] concerns regarding her

physical problems."[99]  The ALJ cited the dozens of therapy notes spanning two

years from SW Nunez and Dr. Kury chronicling these stressors.  From this the ALJ

inexplicably concluded that the extensive documentation of Garcia's depression

was evidence undermining the opinion of her treating psychiatrist instead of

evidence corroborating it.[100]

---

[97]    *Id*. at 548.

[98]    *Id*. at 22.

[99]    *Id*.

[100]   *See id*.

21

The ALJ also pointed to the lack of documentation regarding "significant cognitive difficulties, suicidal/homicidal ideation, impaired thought processes, and hallucinations or delusions" as evidence undermining Dr. Kury's functional assessment.[101]  Yet the ALJ failed to accord any significance to the numerous explicit clinical findings of severe impairments on the Treatment Plan Reviews and ignored the fact that Garcia had been prescribed two different antidepressants for the entire time period documented by the Treatment Notes.

An ALJ may not "simply pick and choose from the transcript only such evidence that supports his determination."[102]  This is precisely the sort of second guessing the treating physician rule is designed to prevent.  Indeed, "[b]ecause mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health."[103]  ALJ Friedman erred by "improperly and 'arbitrarily substitut[ing] his own judgment for competent medical opinion,' and 'set[ing] his

---

[101]    *Id.*

[102]    *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004).

[103]    *Roman v. Astrue*, No. 10 Civ. 3085, 2012 WL 4566128, at *18 (E.D.N.Y. Sept. 28, 2012) (citing *Canales v. Commissioner of Soc. Sec.*, 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010)).  *Accord Drake v. Astrue*, No. 07 Civ. 377, 2008 WL 4501848, at *4 (W.D.N.Y. Sept. 30, 2008) ("In cases where the Plaintiff alleges a disability primarily based on a mental impairment, the treating physician's opinion may be more important still.").

own expertise against that of [the treating psychiatrist].'"[104]

The ALJ's reliance on Dr. Fujiwaki's evaluation is also misplaced. Dr. Fujiwaki noted, consistent with the opinion of Dr. Kury, that Garcia would have difficulty maintaining a regular work schedule and that she would struggle to deal with stress.  Although these findings note slightly less severe restrictions than those found by Dr. Kury, Dr. Fujiwaki examined Garcia four months prior to Dr. Kury's completion of the first Impairment Questionnaire and over a year prior to the completion of the second Impairment Questionnaire.[105]  Most notably, Dr. Fujiwaki evaluated Garcia two days prior to the completion of Garcia's least restrictive Treatment Plan Review.  At the time Dr. Fujiwaki assessed Garcia, Dr. Kury assigned Garcia a GAF score of 65 – indicating "mild overall impairment" – but by the time the first Impairment Questionnaire was completed Dr. Kury

---

[104]    *Sublette v. Astrue*, 856 F. Supp. 2d 614, 619 (W.D.N.Y. 2012) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).

[105]    *See Colegrove v. Commissioner of Soc. Sec.*, 399 F. Supp. 2d 185, 194 (W.D.N.Y. 2005) (noting that the opinion of a consulting psychiatrist did not constitute substantial evidence contradicting the opinion of the treating psychiatrist when it covered a different time period); *Talanker v. Barnhart*, 487 F. Supp. 2d 149, 159 (E.D.N.Y. 2007) ("[B]ecause the treating physician has developed a relationship with the claimant over time and has the benefit of a longitudinal view of the claimant's condition and progress, the treating physician's opinion is considered more valuable than the opinions of consulting physicians, who may have examined the claimant only once.").

assigned Garcia a GAF score of 55 – indicating more severe impairment.[106]

Finally, it was error to assign "significant weight" to the opinion of a consulting

psychiatrist who evaluated Garcia a single time while completely disregarding the

opinion of Dr. Kury who evaluated Garcia at least eleven times.[107]

      Remand is unnecessary "'[w]here application of the correct legal

standard could lead to only one conclusion.'"[108]  Properly applying the treating

physician rule here leads to the conclusion that Garcia would not be able to

maintain a regular work schedule or deal with the stress of a work environment.  In

addition to the testimony of the VE, "there is ample authority that absences of three

or more days per month preclude gainful employment."[109]  Garcia is therefore

disabled within the meaning of the SSA.

## V.  CONCLUSION

      For the foregoing reasons, the decision of the Commissioner is

---

[106]    Tr. at 21-22.

[107]    *See Avila v. Astrue*, 933 F. Supp. 2d 640, 654 (S.D.N.Y. 2013) (finding error in assigning controlling weight to the opinion of a consulting psychiatrist who only evaluated the claimant a single time).

[108]    *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)).

[109]    *Saunders v. Colvin*, 93 F. Supp. 3d 179, 186 (W.D.N.Y. 2015) (collecting cases).

REVERSED and the case is REMANDED for the calculation of benefits. The

Clerk of the Court is directed to close these motions (Dkt. Nos. 17, 19) and

terminate this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           March 3, 2016

25

## - Appearances -

**For Plaintiff:**
Charles E. Binder, Esq.
Binder and Binder P.C.
60 East 42nd Street, Suite 520
New York, NY 10165
(212) 677-6801

**For Defendant:**
Jeremy Asen Linden, Esq.
Social Security Administration, Office of the General Counsel
26 Federal Plaza, Rm. 3904
New York, NY 10278
(212) 264-2473